**Affirmed and Opinion Filed October 12, 2020**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-19-00172-CR**
_____

**JAMES WILLIAM DAVIS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 422nd Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 18-00392-422-F**

# MEMORANDUM OPINION

Before Justices Myers, Whitehill, and Pedersen, III
Opinion by Justice Pedersen, III

Appellant pleaded not guilty to charges of (1) aggravated assault with a deadly weapon and (2) assault of a person with whom he had a dating relationship by impeding the normal breathing or circulation of blood. Appellant exercised his right to a jury trial, and the jury found him guilty of both counts. The trial court assessed appellant's punishment at twenty-five and twenty years, to run concurrently. Appellant raises five issues in this court. We affirm the judgment of the trial court.

# I.     BACKGROUND

## A. December 15, 2017

On December 15, 2017, Kaufman County Sheriff's Office 9-1-1 dispatcher Kristen Keierleber received a call from a person who reported that "the neighbors were beating the hell out of each other… that girl is screaming down there … she said he was hitting her in the face." Kaufman County Sheriff's Office dispatched Deputies Dylan Roberts and Ryan Rigsby on the domestic violence call to appellant's grandparents' compound, which included appellant's home. The deputies arrived but could not locate appellant. Appellant's girlfriend, complainant, was injured. Crying, complainant told the officers that Appellant beat her, tried to strangle her, and threatened to kill her if she called the police.

## B. Guilt-Innocence Phase of Trial

A grand jury indicted appellant on four counts. Prior to trial, the State abandoned the first count and severed the fourth count from the instant case.[1] Over the course of the trial, the jury heard testimony from multiple witnesses including the deputies, complainant, Dr. Dennis Heard—an expert in the field of emergency medicine, and Elizabeth Wolf—an expert on domestic violence and recantations.

---

[1] At trial, the aggravated assault with a deadly weapon was Count One, and the assault of a person with whom he had a dating relationship by impeding the normal breathing or circulation of blood was Count Two.

The State introduced video recordings from the deputies' body-cameras, which included complainant's identification of appellant as her assailant, and photos of her injuries. Dr. Dennis Heard testified on the subject of "deadly weapon," specifically describing the type of injuries that a strike to the head with a closed fist was capable of causing.

Contrary to the deputies' testimony and her statements on the body-camera videos, complainant testified at trial that her injuries were the result of being struck in the face by a car door.

> I was mad when I came out of the house, and he took my keys. I couldn't find him. I was mad. I opened the car door, and when I opened it, it swung back and it hit me in the face. … when the door hit me in the eye, it did cut me…

Complainant recanted her statements alleging appellant committed assault. Instead, complainant testified that she fabricated the story she told the deputies, including the strangling allegation. Furthermore, complainant filed multiple affidavits of non-prosecution in appellant's favor. When asked "…you care very much about the [appellant]?" complainant answered "[y]es. I'll love him till the day I die."

Although the State rested at the end of the day on December 11, 2018, the trial court permitted the State to reopen its evidence on December 12, 2018—over appellant's objections to relevance, notice, and surprise—to introduce Wolf's

testimony.[2] The trial court conducted a hearing outside the presence of the jury on Wolf's anticipated expert testimony pursuant to Texas Rule of Evidence 705 and permitted Wolf to testify on the areas of "[d]omestic violence and recantation."[3]

The jury returned a guilty verdict on both the offense of aggravated assault causing bodily injury with a deadly weapon and the offense of assault causing bodily injury to a family member.

### C. Punishment Phase of Trial

Both parties presented evidence relating to appellant's character.[4] Pertinent to our discussion, Patrol Deputy Haller with the Kaufman County Sheriff's Office testified to his August 6, 2017 interview of a woman named Jessica Marical. During the interview, Marical alleged that appellant assaulted her ("Marical Investigation").

Deputy Haller testified that another deputy, Hepitasio Perea, supervised him on the day of the Marical Investigation. Deputy Haller testified that Perea had been separated from service at Kaufman County because of a matter "totally unrelated by time and distance" to the appellant's charges. Appellant objected that this "testimony

---

[2] "The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." TEX. CODE CRIM. PROC. ANN. art. 36.02.

[3] "Before an expert states an opinion or discloses the underlying facts or data, an adverse party in a civil case may--or in a criminal case must--be permitted to examine the expert about the underlying facts or data. This examination must take place outside the jury's hearing." TEX. R. EVID. 705(b).

[4] "Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character…" CRIM. PROC. art. 37.07, § 3 (a)(1).

before the court [was] *Brady* evidence that was never brought to [his] attention." Appellant's trial counsel moved "the Court to vacate … or overturn the convictions in this case due to the fact that the State did not turn over *Brady* evidence…" The trial court denied this motion.[5]

The jury assessed appellant's punishments at twenty-five and twenty years of confinement, with the sentences running concurrently.[6] This appeal followed.

## II.    ISSUES RAISED ON APPEAL

Appellant raises four issues on appeal, which we restate as follows:

1. Whether there is legally sufficient evidence to support that in the manner of its use or intended use, Appellant's hand was capable of causing serious bodily injury.

2. Whether there is legally sufficient evidence that Appellant impeded complainant's breathing.

3. Whether the trial court abused its discretion in permitting the State to reopen its case and introduce expert testimony on cycles of domestic violence and recantations in domestic-violence cases.

4. Whether the assault count's optional verdict form was improper.

5. Whether a criminal charge pending against a non-testifying sheriff's deputy was Brady evidence.

---

[5] We note that the State thereafter moved the trial court to "strike or otherwise excise the evidence adduced by Deputy Haller" and the State's exhibits introduced through him. The trial court granted this request to disregard the testimony of Deputy Haller and the State's exhibits introduced through him.

[6] The jury assessed punishment for the count of aggravated assault with a deadly weapon at twenty-five years. The trial court assessed the punishment for the count of assault of a person with whom he had a dating relationship by impeding the normal breathing or circulation of blood at twenty years.

–5–

## III.    ISSUES ONE AND TWO – LEGAL SUFFICIENCY

### A. Standard of Review

When reviewing a challenge to the sufficiency of the evidence supporting a criminal offense, we conduct our review under the single sufficiency standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014). We view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2011). "We do not resolve conflicts of fact, weigh evidence, or evaluate the credibility of the witnesses as this is the function of the trier of fact." *Williamson v. State*, No. 05-19-00812-CR, 2020 WL 4218221, at *3 (Tex. App.—Dallas July 23, 2020, no pet. h.) (mem op., not designated for publication); *see Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

In analyzing legal sufficiency, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton*, 235 S.W. 3d at 778. "When the reviewing court is faced with a record supporting contradicting inferences, the court must presume that the jury resolved any such conflicts in favor of the verdict, even if not explicitly stated in the record." *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017) (citing *Montgomery v. State*, 369 S.W.3d

–6–

188, 192 (Tex. Crim. App. 2012)). We defer to the factfinder's resolution of conflicting inferences. *Clayton*, 235 S.W.3d at 778. The factfinder may choose to disbelieve all or any part of a witness's testimony. *Williamson*, 2020 WL 4218221, at *3. We treat direct and circumstantial evidence equally: circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.*

**B. Analysis**

*1. Evidence of Whether Appellant's Hand Was Capable of Causing Serious Bodily Injury*

Appellant first contends that the evidence is legally insufficient to support his conviction for aggravated assault—arguing that his hand was not a deadly weapon. Appellant argues that complainant suffered "minimal injuries… illustrating that the manner [appellant] used his hand was incapable of causing death or serious bodily injury." Appellant relies on *Davis v. State*, wherein our sister court held that a complainant's injuries of bruising to the face, a laceration to his nose, and numbness on his head did not demonstrate that appellant used his hands in a manner that was capable of causing death or serious bodily injury. 533 S.W.3d 498, 510 (Tex. App.—Corpus Christi 2017, pet. ref'd). We reject appellant's argument and reliance on *Davis*.

Texas Penal Code Section 1.07(a)(17)(B) defines "deadly weapon" as "anything that in the manner of its use or intended use is *capable of causing death*

*or serious bodily injury.*" TEX. PENAL CODE § 1.07(a)(17)(B) (emphasis added). "The State is not required to show that the 'use or intended use causes death or serious bodily injury' but that the 'use or intended use is capable of causing death or serious bodily injury.'" *Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008) (quoting *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000)). "[A] fist or hand are not 'deadly weapons' per se but can become such only in the manner used depending upon the evidence shown." *Turner v. State*, 664 S.W.2d 86, 90 (Tex. Crim. App. 1983). Even without expert testimony or a description of the weapon, the injuries suffered by a victim can be a sufficient basis for inferring that a deadly weapon was used. *Tucker*, 274 S.W.3d at 691–92. We have previously held:

> [w]hen determining whether a hand or a fist is a deadly weapon, the jury may consider all of the evidence presented, including the physical proximity between the alleged victim and the object; any threats or words used by the accused; the size and shape of the object; the potential of the object to inflict death or serious bodily injury; the manner in which the accused allegedly used the object; testimony by the victim that she feared death or serious bodily injury; and testimony as to the weapon's potential for causing death or serious bodily injury.

*Brantley v. State*, 05-13-00225-CR, 2014 WL 545514, at *3 (Tex. App.—Dallas Feb. 10, 2014, no pet.) (mem. op., not designated for publication) (citing *Kennedy v. State*, 402 S.W.3d 796, 802 (Tex. App.—Fort Worth 2013, pet. filed) (mem. op.); *Romero v. State*, 331 S.W.3d 82, 83 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd)).

The State presented witness testimony and video evidence of complainant's physical condition from December 15, 2017. The deputies described and the body-camera videos depicted complainant explaining the cause of her facial injuries. Complainant described how appellant struck her face—first with his open hand and second with his closed fist. The video and photographic evidence show complainant had a large amount of bruising and swelling on her face. Deputy Roberts testified that complainant's "right eye [was] swollen and bleeding," and she had "blood on her face" and "on the front of her shirt." The photos show complainant's right eye swollen shut, lacerations to the right side of her face, and smears of blood on her car, her clothes, and appellant's grandfather's golf-cart. Complainant stated on the body-camera videos that appellant threatened to kill her and that "it would be the end" for her. Dr. Heard testified that if a person's hand was driven into the head in the manner alleged against appellant—"with such force and location as indicated on [complainant]'s body, that it caused the injuries that he observed in [complainant]"—such a punch could be capable of causing death or serious bodily injury.[7]

Considering the evidence in the light most favorable to the verdict and indulging every reasonable inference that would support the trial court's verdict, the

---

[7] Dr. Heard testified that such a punch could cause (i) traumatic brain injury, a globe rupture ("when the, the average structure of the eye is disrupted, and the inner contents leak out … altering the pressure and the function of the eye"), (ii) orbital compartment syndrome ("when the pressure in the eye gets higher than normal, which causes compromised blood flow so that the eye does not get enough blood and oxygen, and it dies"), or (iii) a long-term loss or impairment of the function of the eye.

jury could have found appellant used or intended to use his hand as a deadly weapon. We conclude that the evidence is legally sufficient to support the jury's finding that Appellant's hand was a deadly weapon—capable of causing serious bodily injury. We overrule appellant's first issue.

2. *Evidence of Whether Appellant Impeded Complainant's Breathing*

Next, appellant contends that the trial court erred in denying his request for an instructed verdict of not guilty on the charge of assault of a person with whom he had a dating relationship by impeding the normal breathing or circulation of blood. Appellant specifically argues that there is no evidence that he "actually imped[ed] the [complainant's] normal breathing or circulation."

Texas Penal Code Section 22.01(a)(1) defines assault as when a person "(1) intentionally, knowingly, or recklessly causes bodily injury to another." PENAL § 22.07(a)(1). The offense is enhanced to a third degree felony if the offense is committed against a person with whom the accused had a dating relationship and was a member of his family or household, if it is shown that . . . the offense was committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat

or neck. PENAL § 22.01(b)(2); TEX. FAM. CODE ANN., §§ 71.0021(b)[8], 71.003[9], 71.005.[10] "An impediment to normal breathing does not necessarily prevent breathing altogether because an impediment is merely a hindrance or obstruction." *Marshall v. State*, 479 S.W.3d 840, 845 (Tex. Crim. App. 2016). Testimony that a person was "never entirely unable to breathe does not foreclose the possibility" that the person's normal breathing was hindered. *Id.*

Here, the record shows that complainant and appellant had a dating relationship and shared a household.[11] In the video evidence, complainant explained that appellant "put his arms around my throat and my neck… and had his hand covered over my face like he was trying to smother me"—while motioning with her arms and hands to her throat and mouth. Complainant told Deputy Rigsby that,

---

[8] Texas Family Code Section 71.0021(b) provides that "dating relationship"

…means a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature. The existence of such a relationship shall be determined based on consideration of: (1) the length of the relationship; (2) the nature of the relationship; and (3) the frequency and type of interaction between the persons involved in the relationship.

FAM. § 71.0021(b).

[9] Texas Family Code Section 71.003 provides that "family"

…includes individuals related by consanguinity or affinity, as determined under Sections 573.022 and 573.024, Government Code, individuals who are former spouses of each other, individuals who are the parents of the same child, without regard to marriage, and a foster child and foster parent, without regard to whether those individuals reside together.

FAM. § 71.003.

[10] Texas Family Code Section 71.003 describes that "'Household' means a unit composed of persons living together in the same dwelling, without regard to whether they are related to each other." FAM. § 71.005.

[11] The evidence shows that complainant and appellant dated for a number of years and were previously engaged. Complainant testified that she and appellant "lived together more than separated" from 2014 to 2017.

although appellant tried to strangle her, appellant did not impede her breathing. However, when the Deputy Rigsby asked "So when you got to your car is when he started choking you?" complainant nodded her head up and down and answered "I started laying on the horn and hollering hoping that the neighbors would hear." Complainant further stated, "I don't know if I have any marks on my neck or not," while motioning with her hands to her neck.

Complainant conceded at trial that, three days after the incident, she recounted the events of December 15, 2017, to an investigator–-telling him that she was "in a choke hold with [appellant's] hand over [her] mouth, feeling unable to breath[e]; that "[she] thought [she] would pass out and finally shoved him away." Appellant argues that he "receive[d] a limiting instruction with regards to the Jury's consideration of [complainant's statement to the investigator]," characterizing this testimony as impeachment evidence against complainant. However, appellant neither objected to the testimony nor requested a limiting instruction when the State introduced complainant's statements to the investigator.[12] "The Court [of Criminal Appeals] has told us that a "party opposing evidence has the burden of objecting and requesting the limiting instruction at the introduction of the evidence." *Hammock v. State*, 46 S.W.3d 889, 892 (Tex. Crim. App. 2001)) (internal quotation omitted); *Navarro v. State*, 280 S.W.3d 405, 406 (Tex. App.—Amarillo 2008, no pet.).

---

[12] We note that appellant refers us to the general instruction found in the jury charge that impeachment evidence should be considered only for purposes of evaluating credibility.

Without a specific objection and accompanying limiting instruction, complainant's statement(s) to the investigator became a part of the general evidence, admitted for all purposes. *See Hammock*, 46 S.W.3d at 892; *Navarro*, 280 S.W.3d at 406.

A jury could reasonably infer that appellant impeded complainant's normal breathing, and the evidence is legally sufficient to support such a finding. We therefore hold that the jury had sufficient evidence to find appellant guilty of impeding complainant's normal breathing. We conclude the trial court did not err in denying appellant's request for an instructed verdict on this issue. We overrule appellant's second issue.

## IV.    ISSUE THREE – ADMISSION OF EXPERT TESTIMONY

### A. Standard of Review

Texas Rule of Evidence 702 provides that

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

TEX. R. EVID. 702; *see Scugoza v. State*, 949 S.W.2d 360, 363 (Tex. App.—San Antonio 1997, no pet.). We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion. *Wolfe v. State*, 509 S.W.3d 325, 335 (Tex. Crim. App. 2017). We uphold a trial court's ruling if it is within the zone of reasonable disagreement. *Id.*

–13–

**B. Analysis**

Appellant contends that the trial court erred in permitting the State to reopen evidence—after previously resting—during the guilt-innocence phase of trial to introduce expert testimony from Wolf. Specifically, appellant argues that Wolf's testimony (1) was inadmissible because she was unqualified to testify on domestic violence recantations and (2) was not "necessary to a due administration of justice." *See* CRIM. PROC. art. 36.02. The record does not contain any objection from appellant based on (1) Wolf's qualifications or (2) the State's reopening of evidence as not necessary to a due administration of justice. During trial, the appellant specifically objected only to Wolf's testimony based on notice, surprise,[13] and relevance.[14] Therefore, appellant failed preserve his complaints as to (1) Wolf's qualifications and (2) reopening evidence for appellate review. *See* TEX. R. APP. P. 33.1(a). Even if appellant had properly raised these objections at trial, the trial court did not abuse its discretion in admitting the expert testimony as discussed below.

*1. Expert Qualification and Relevance*

Whether an expert is qualified to testify involves a two-step inquiry—first determining whether the witness has a sufficient background in a particular field and

---

[13] Appellant's objections to Wolf's testimony based on notice and surprise are not properly briefed. Nonetheless, the record indicates that Wolf was properly designated and subpoenaed for trial.

[14] We note that appellant made a remark to the trial court that "even if the witness is qualified under 702 to give that opinion, [and] we're not conceding that she is, she still has to overcome a 403 ruling." Nonetheless, appellant made no formal objection about, and received no ruling on, Wolf's qualifications.

second whether that background goes to the matter on which the witness is to give an opinion. *Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010).

With respect to Wolf's qualifications, Wolf testified that she was a "sexual assault nurse examiner for various counties and children advocacy centers" and that she owns "a business called Forensic Nurse Experts" where she teaches "on different aspects of forensic nursing." Wolf testified that she had "a certification for the Office of the Attorney General in Texas for adult and pediatric sexual assault nurse examiner, as well as an international association certification for sexual assault consultant for the International Association of Forensic Nurses." Wolf had received training "as it relates to family violence or intimate partner violence" and taught "an [eighty] hour sexual assault nurse examiner class that includes domestic violence, human trafficking, strangulation, the domestic violence and different aspects of how a patient can present on all of those things."

In *Scugoza v. State*, our sister court held that a program services director of a county women's shelter was qualified to give expert testimony describing cycles of spousal abuse. 949 S.W.2d at 363. In *Brewer v. State*, our sister court held that a master social worker—with specialized training employed by police to work with domestic violence victims—was qualified to give expert testimony regarding the dynamics of domestic violence. 370 S.W.3d 471, 473–74 (Tex. App.—Amarillo 2012, no pet.). In *Lessner v. State*, our sister court held that a licensed master social worker and executive director of a family crisis center was qualified to give expert

–15–

testimony on the dynamics of family violence and typical behavior of domestic violence victims in relation to their abuser. No. 02-15-00400-CR, 2016 WL 4473263, at *3 (Tex. App.—Fort Worth Aug. 25, 2016, no pet.) (mem op., not designated for publication).

We agree with our sister courts. Wolf's testimony to the jury was probative to explain the power and control wheel in the context of domestic violence, that it's not uncommon for there to be no visible evidence of strangulations, and that recantations may be common in domestic-violence situations. Wolf's testimony helped to explain why someone who had been a victim of an assault would report an assault but later sign an affidavit of nonprosecution, change the story of the injury, and otherwise cooperate with the defense. Given Wolf's background, training and experience, the trial court did not abuse its discretion in finding that she was qualified to provide expert testimony "on the subject of domestic violence and recantation."

*2. Due Administration of Justice*

"The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." CRIM. PROC. art. 36.02. Thus, Article 36.02 mandates certain circumstances in which a trial court *must* permit a party to reopen evidence before argument is concluded. *Id.*; *Swanner v. State*, 499 S.W.3d 916, 920 (Tex.

App.—Houston [14th Dist.] 2016, no pet.).[15] Since the State's request to reopen evidence was made before argument concluded, we turn to whether the evidence was "necessary to a due administration of justice."

In *Peek v. State*, the Court of Criminal Appeals held "a due administration of justice means a judge should reopen the case if the evidence would materially change the case in the proponent's favor." 106 S.W.3d 72, 79 (Tex. Crim. App. 2003) (internal quotations omitted). Here, the trial court permitted the State to reopen evidence for Wolf's testimony. Wolf conceded that she had no personal knowledge of complainant or the case at hand. Nonetheless, Wolf "believe[d] that [her] specialized knowledge and experience would assist the jury in understanding" a case "involving strangulation of a family member and aggravated assault with a deadly weapon against a family member." Wolf testified (1) on the "power and control wheel" in the context of domestic violence, (2) that it's not uncommon for there to be no visible evidence of strangulation, (3) that recantations from victims of domestic violence are not uncommon, and (4) that it's common for victims of domestic violence to request an affidavit of non-prosecution. Wolf's testimony was material to the charges against appellant, addressed complainant's recantation, and thereby changed the case in the State's favor. Therefore, we hold that the trial court

---

[15] "Article 36.02 limits the trial court's discretion to reopen a proceeding and hear more evidence only *once argument has concluded*." *Swanner*, 499 S.W.3d at 920 (emphasis in original).

did not abuse its discretion when it found that this evidence was necessary to a due administration of justice. *See id.*

We conclude that the trial court's ruling, which permitted Wolf's testimony after reopening evidence, was within the zone of reasonable disagreement. *See Wolfe*, 509 S.W.3d at 335. The trial court did not abuse its discretion by reopening evidence to admit Wolf's expert testimony. We overrule appellant's third issue.

## V.    ISSUE FOUR – OPTIONAL VERDICT FORM

### A. Standard of Review

When a disputed verdict form is included in a jury charge, we review verdict form errors as jury charge errors. *Jennings v. State*, 302 S.W.3d 306, 310 (Tex. Crim. App. 2010). Our review involves (i) a determination of whether the charge was erroneous and, if it was, then (ii) a harm analysis, with the standard of review for harm being dependent on whether error was preserved for appeal. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). A jury charge error that was unobjected-to will not result in reversal of a conviction in the absence of "egregious harm." *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008) (citing *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994)).

### B. Analysis

Appellant contends that the assault count's verdict form was erroneous because it required the jury to determine only whether he was (a) guilty or (b) not guilty "of Assault Causing Bodily Injury to a Family Member, as charged in Count

[two] of the Indictment." Appellant argues that the "[c]harge does not track the strangulation count nor does it adequately describe the offense within the verdict form." Appellant concedes that he did not specifically object to the jury charge.[16]

Here, the indictment alleged that appellant did:

intentionally, knowingly, and recklessly cause bodily injury to [complainant], … a person with whom the defendant has or has had a dating relationship, as described by Section 71.0021 (b) of the Texas Family Code, by intentionally, knowingly, and recklessly impeding the normal breathing or circulation of the blood of complainant by applying pressure to the throat or neck and/or by blocking the nose or mouth of complainant…

The application paragraph of the jury charge provided

… if you believe from the evidence beyond a reasonable doubt that on or about December 15, 2017 in Kaufman County, Texas the Defendant. James William Davis, did then and there intentionally, knowingly, or recklessly cause bodily injury to [complainant], … a person with whom the defendant has or has had a dating relationship, as described by Section 71.0021(b) of the Texas Family Code, by intentionally, knowingly, and recklessly impeding the normal breathing or circulation of the blood of complainant by applying pressure to the throat or neck and or by blocking the nose or mouth of complainant, then you will find the defendant guilty of the offense of assault of a family member as charged in the indictment. …

The related verdict form provided

We, the Jury, find the Defendant, James William Davis, GUILTY of the offense of Assault Causing Bodily Injury to a Family Member, as charged in Count II of the Indictment.

---

[16] However, we note that appellant asked the court for its opinion on the sufficiency of the verdict form "because it's not asking for a finding on any type of strangulation." The trial court responded " I think as long as it is as charged in Count 2[,] it's okay… I'm going to go ahead, if you have no further objections and sign both charges." The appellant raised no further objection to the charges.

–19–

"[A] trial judge need not attach a verdict form to the jury charge, but if he does so, it must set out every "guilty" or "not guilty" option that is available to the jury. *The verdict form then becomes a part of the jury charge…" Jennings*, 302 S.W.3d at 310 (emphasis added). There is no requirement that the verdict form "recite the elements" of the offense. *Hernandez v. State*, 819 S.W.2d 806, 815 (Tex. Crim. App. 1991). Appellant cites no authority for his proposition that the verdict form is required to track the strangulation count. The verdict form language, in combination with the jury charge, sets forth "the law applicable to the charge." CRIM. PROC. art. 36.14. We reject appellant's argument that the verdict form was erroneous and do not reach the second step of this inquiry. We overrule appellant's fourth issue.

## VI.    ISSUE FIVE – BRADY EVIDENCE

### A. Standard of Review

In *Brady v. Maryland*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Thus, a Brady violation occurs when the state suppresses, willfully or inadvertently, evidence favorable to appellant. *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006).[17] "Favorable evidence is any evidence that, if disclosed and

---

[17] There can be no *Brady* violation without suppression of favorable evidence. *Harm*, 183 S.W.3d at 406.

used effectively, may make the difference between conviction and acquittal." *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999).

The Texas Court of Criminal Appeals has held:

… to find reversible error under *Brady* … a defendant must show that

> (1)    the State failed to disclose evidence, regardless of the prosecution's good or bad faith;
> (2)    the withheld evidence is favorable to him;
> (3)    the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different[;]
> …
> [(4)]    the evidence central to the *Brady* claim [is] admissible in court.

*Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011) (internal citations omitted).

### B. Analysis

Appellant asserts that the State failed to disclose evidence admitted during the punishment phase that (1) Deputy Haller was on patrol with then-deputy Perea; (2) Perea was supervising Deputy Haller; and (3) Perea was separated from service at Kaufman County Sheriff's Office. Appellant asserts this evidence was *Brady* violation and its suppression constitutes grounds for reversal. The State informed the trial court that Perea "is currently standing charged with sex assault of a child and multiple counts unrelated to this case." Appellant's counsel stated he had "not received any information at all as far as any misconduct or termination or anything else as it relates to Perea." The State did not dispute its failure to disclose this

–21–

evidence regarding Perea. Thus, appellant meets the first element of our *Brady* analysis.

We next consider whether the evidence regarding Perea was favorable to appellant—whether it may have made the difference between appellant's conviction and acquittal. *See Little*, 991 S.W.2d at 866; *McGee v. State*, No. 05-13-00285-CR, 2014 WL 1022463, at *2 (Tex. App.—Dallas Mar. 13, 2014, pet. ref'd) (mem. op., not designated for publication) (discussing *Brady* violation allegation on evidence admitted during the punishment phase of trial). Perea did not testify or otherwise provide any evidence at trial. Although Deputy Haller confirmed that Perea supervised him during the Marical Investigation, Deputy Haller testified that "I filled out the packet, did the report, signed everything. It was, again, my report."

There is neither evidence that Perea had any involvement with the charges against appellant in the instant case nor evidence that Perea conducted any part of the Marical Investigation. The potential *Brady* evidence could have been admissible evidence only of Perea's credibility. *See* TEX. R. EVID. 608(a); 609(a). However, evidence bearing on the credibility of a person who does not testify is not material. *See Harris v. State*, 827 S.W.2d 949, 958-58 (Tex. Crim. App. 1992). Furthermore, impeachment evidence as to Perea's potential testimony was not material since the evidence shows Deputy Haller conducted the Marical Investigation. *See Ex parte Lalonde*, 570 S.W.3d 716, 726 (Tex. Crim. App. 2019) (holding that a chief deputy sheriff's perjury regarding his credentials was not material, and thus denying

–22–

appellant's *Brady* claim, where the chief deputy sheriff's testimony was corroborated by other officers). For those reasons, we conclude that the purported *Brady* evidence was neither favorable to appellant nor material. We reject appellant's assertion of a *Brady* violation and overrule appellant's fifth issue.

## VII.  CONCLUSION

Having overruled all of appellant's issues raised on appeal, we affirm the judgment of the trial court.

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE

190172f.u05

Do Not Publish
TEX. R. APP. P. 47



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JAMES WILLIAM DAVIS,
Appellant

No. 05-19-00172-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 422nd Judicial
District Court, Kaufman County,
Texas
Trial Court Cause No. 18-00392-422-
F.
Opinion delivered by Justice
Pedersen, III. Justices Myers and
Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 12th day of October, 2020.