**Opinion issued August 12, 2021**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-20-00150-CR

————————————

**ALFREDO DE LA CRUZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Case No. 1503082**

## MEMORANDUM OPINION

Appellant, Alfredo de la Cruz, was charged with the offense of continuous sexual abuse of a child. A jury convicted him of the lesser-included offense of aggravated sexual assault of a child, and the trial court assessed his punishment at 18 years' imprisonment. In two issues, appellant argues that (1) the evidence

supporting his conviction is legally insufficient in light of the complainant's recantation of the allegations at trial, and (2) his Fifth and Fourteenth Amendment rights were violated when the State used "perjured testimony" from the complainant at trial.

We affirm.

## Background

In 2015, when the complainant N.D.L.C. ("Nadia")[1] was eleven years old and in sixth grade, she told her school counselor that her stepfather, appellant, was raping her. Appellant was subsequently charged with continuous sexual assault of a child. At his trial, the State presented evidence of the sexual assaults through an outcry witness, Claudia Gonzalez. Gonzalez testified that she was a forensic interviewer at the Child Assessment Center, who interviewed Nadia after the school counselor reported the abuse to child protective services.

Gonzalez testified that Nadia was eleven years old at the time of the interview in which she disclosed specific incidents of sexual abuse that began when she was nine and continued until the time of the interview. Nadia reported abuse, including fondling, use of a vibrator, four to five instances of mouth-to-vagina contact, and four to five instances of penetration of her vagina or anus by appellant's penis beginning when she was ten years old.

---

[1] We use a pseudonym to protect the complainant's identity and for ease of reference.

2

Gonzalez also testified about the "stages of disclosure" that children who have been sexually assaulted commonly experience. The first stage is denial, in which a child "says nothing has happened." This is followed by tentative and then active disclosure, in which the child will provide details regarding the alleged abuse. Gonzalez stated that the fourth stage is "a recant," which means "although they already told that they were victims, they take it back. They say, no, that actually did not happen." The final stage is then reaffirming the details of the abuse. Gonzalez testified that a child might recant for numerous reasons:

> If any threats are made, if a child has some sort of learning disability or developmental disabilities or just a change in their environment. Taking—telling someone about abuse causes an entire impact on the family, whether it's financial, whether it's day care, school, or having to move. Any of these factors can cause a child to say take it back. They just want everything to go away.

Rachel Fletcher, a sexual assault nurse examiner with Baylor College of Medicine, also testified concerning her medical report from Nadia's physical examination. According to that report, Nadia described multiple instances of sexual contact between herself and appellant that had occurred since she was nine years old, including an instance the day before the examination in which she claimed appellant penetrated her anus while wearing a condom. Fletcher testified that she found no physical evidence of abuse in her examination, but she also testified that "in 97 [to] 99 percent of the [sexual abuse] cases there is no physical injury."

Nadia herself testified at trial. At the time of trial, Nadia was sixteen years old. She recanted her previous allegations against appellant. She testified that she invented the accusation of rape against him after she was confronted by her school counselor about cutting herself. Nadia stated that she was afraid her mother would "feel like she hadn't been paying attention to me," and therefore "made up something, that was my dad raping me." She claims to have made up the accusations to "get [her father] out of the house," as she disliked the strict household restrictions he imposed and felt that he showed favoritism to her little sister.

During her cross-examination, Nadia categorically denied any wrongdoing by appellant. She expressly denied that he touched her breasts or buttocks, and she denied ever being alone in the same room with him. Nadia testified that she could not recall any specific comments relating to the sexual abuse allegations she made during the investigative process, including during her interview with the Child Assessment Center, examination at the hospital, conversations with her mother, or therapy sessions. Regarding her statements at the Child Assessment Center, hospital, and therapy sessions, Nadia recalled her general allegations, stating, "I remember saying that he touched me. That's all I remember."

Nadia testified that she attempted to recant her outcry to prosecutors prior to the trial. She acknowledged that, when she initially sought to recant her allegations at the pretrial meetings, she ultimately ended up reaffirming her initial claims of

sexual abuse. Nadia explained that, during a meeting with a prosecutor at the district attorney's office more than a year before trial, she initially claimed to have lied about her allegations but later admitted to the prosecutor that her idea to lie at trial came from a television show. Nadia also testified that she told the prosecuting attorney that her allegations were false weeks before the trial, but she also testified to reaffirming her claims of abuse at that very same meeting. To account for the discrepancies between her claims, Nadia stated that any of her previous statements alleging sexual abuse to prosecuting attorneys were untrue and resulted from the fact that she "felt . . . pressure to say that [her father sexually abused her]." Specifically, she claimed to have been scared by the power of the attorneys, noting that the prosecuting attorney "[talks] with a very strong voice."

Nadia's mother, C.S., likewise testified at trial that she did not believe Nadia's accusations of sexual abuse and did not discuss the details of the accusation with her daughter. Notes from Nadia's therapy sessions indicate that her mother prematurely ended the sessions on the premise that Nadia "was fine," but her mother rejected that characterization at trial. Nadia's mother testified that "life is harder without [appellant]," and she would "like all of this to go away so that life could get back to normal."

The State questioned Nadia's mother about a phone call appellant made to her on Nadia's first day of testimony at trial. She testified that both she and Nadia

5

listened during the phone call, in which appellant provided some direction for Nadia's further testimony to occur on the following day. In the call, appellant said that he "was hoping that [Nadia] would say she loves me very much, that I'm needed in the house and everything." He encouraged that Nadia's testimony needed to be "firmed up, relaxed, no, no, never ever, no, no" when asked about potential abuse.

Officer A. De La Torre also testified about his investigation into the abuse allegations. Officer De La Torre conducted a voluntary interview with appellant in which appellant admitted touching Nadia's breasts over her clothes, but he repeatedly denied other allegations of sexual penetration. Appellant insinuated in his interview that he touched Nadia as a result of playing with her and grabbing her while he was drunk. When Officer De La Torres asked whether appellant had touched Nadia's vagina, appellant stated, "No. Like I said, I don't know. No. That was like—I mean, I wanted to touch her, yes." Appellant also stated that when he was drunk, he "was somewhat mad" and "tried to touch her. I mean, I wanted to touch her and all that. But I did."

Appellant's therapist, T. Espinoza, testified concerning her time conducting therapy sessions with him as recommended by child protective services. While appellant initially denied committing any offense during group therapy sessions, after four months, he eventually "began to accept responsibility and share it with the group that he had touched [his daughter]." Espinoza testified that appellant only

admitted to touching Nadia's buttocks and nothing else. At one therapy session, appellant wrote an apology letter to Nadia, in which "he explained . . . that he was angry at his wife on the night that he touched [Nadia]."

The jury found appellant guilty of the lesser-included offense of aggravated sexual assault. The trial court assessed appellant's punishment at 18 years' imprisonment. This appeal followed.

## Sufficiency of the Evidence

In his first issue, appellant challenges the sufficiency of the evidence to support his conviction.

## A.    Standard of Review

When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). The evidence may be circumstantial or direct, and juries may draw multiple reasonable inferences from the evidence presented at trial. *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007). "The jury is the sole judge of the credibility of witnesses and the weight to be given to their testimonies, and the reviewing court must not usurp this role by substituting its own judgment for that of the jury." *Queeman*, 520

7

S.W.3d at 622. Thus, "the jury can believe all, some, or none of a witness's testimony." *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020). We presume that the jury resolved any conflicting inferences in favor of the verdict, and we defer to that determination. *Id.* at 855–56.

A person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child under the age of fourteen, by any means. *See* TEX. PENAL CODE §§ 22.021(a)(1)(B)(i), (a)(2)(B).

## B.    Analysis

Appellant asserts that the evidence was insufficient to support his conviction for aggravated sexual assault of child because Nadia denied in her trial testimony that he had committed any acts of sexual abuse against her. Appellant points to numerous aspects of Nadia's testimony and other evidence presented at trial to support his argument that the jury's verdict here was not rational, including: Nadia's testimony that she lied about the abuse in order to remove appellant from the home and to divert attention from her own self-harming behaviors; the State's knowledge in advance of trial that Nadia would recant the allegations against appellant; Nadia's delay in reporting the abuse; the lack of medical evidence or serology supporting the claim of sexual abuse; and the lack of eyewitnesses.

8

We observe, however, that appellant's arguments on this point ignore significant portions of the evidence presented by the State. The State presented the testimony of the forensic interviewer, Gonzalez, who stated that Nadia made an outcry of abuse and disclosed numerous incidents in which appellant penetrated her vagina or anus with his sexual organ. *See Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("[A] child victim's outcry statement alone can be sufficient to support a sexual abuse conviction."). The nurse examiner, Fletcher, likewise testified that Nadia disclosed incidents of penetration by appellant. Fletcher further explained that in the vast majority of cases, there are no physical signs of sexual abuse. The State also presented a record of appellant's interview with Officer De La Torre and therapy notes from appellant's treatment with Espinoza. Appellant denied the allegations that he penetrated Nadia, but he acknowledged touching her breasts and buttocks while he was drunk and stated that he wanted to touch her.

In addition to this testimony, the State presented evidence putting Nadia's recantation at trial into context. Nadia's mother testified that she never believed the allegations that Nadia made against appellant, that life had been harder since appellant was forced to leave the home, and that she wanted "all of this to go away so that life could get back to normal." Gonzalez testified that it was not uncommon for children who had been sexually assaulted to recant their allegations once they

9

realize all of the consequences that arise from exposing abuse. The State also presented evidence that appellant called Nadia's mother from jail, spoke to Nadia and her mother about Nadia's testimony at trial, and coached Nadia regarding her testimony for the next day. Appellant told Nadia and her mother that he "was hoping that [Nadia] would say she loves me very much, that I'm needed in the house and everything." He encouraged Nadia that her testimony needed to be "firmed up, relaxed, no, no, never ever, no, no" when asked about potential abuse.

Nadia's own testimony provided some evidence regarding her reasons for recanting at trial. Nadia testified that she attempted to recant her outcry to prosecutors prior to the trial, but she ultimately ended up reaffirming her claims of sexual abuse. In that meeting, she admitted to one of the prosecutors that she got the idea to recant her testimony from a television show.

Considering all the evidence, as we must, we conclude that a rational jury could have found appellant guilty of aggravated sexual assault of Nadia. *See Jackson*, 443 U.S. at 319. The State presented some conflicting evidence—the outcry that Nadia made regarding the abuse contrasted with her recantation at trial. It was the jury's responsibility as the factfinder to resolve any conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See id.*; *Queeman*, 520 S.W.3d at 622. We may not re-evaluate the evidence's weight and credibility, nor may we substitute our judgment for the jury's.

10

*Queeman*, 520 S.W.3d at 622. The jury was free to believe Nadia's outcry to Gonzalez and the additional evidence putting her recantation at trial into context over her trial testimony denying the allegations against appellant. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (stating trier of fact can observe complainant's demeanor, is entitled to reconcile any conflicts in testimony, and can disbelieve witness's recantation of prior testimony); *Jackson v. State*, 110 S.W.3d 626, 631 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) ("[A] criminal conviction, which requires proof beyond a reasonable doubt, may rest on hearsay despite the lack of the complainant's testimony or even the complainant's recantation.").

We overrule appellant's first issue.

**Testimony**

In his second issue, appellant argues that the State "knowingly used perjured testimony in violation of the Fifth and Fourteenth Amendments of the United States Constitution," thereby impacting his due-process rights.

A. **Standard of Review**

The Due Process Clause of Fourteenth Amendment can be violated when the State uses materially false testimony to obtain a conviction. *Ex parte Lalonde*, 570 S.W.3d 716, 722 (Tex. Crim. App. 2019). "The violation can be caused by false testimony elicited by the State or by the State's failure to correct testimony it knows

to be false." *Id.* There is no requirement that the offending testimony be criminally perjurious; rather, "[i]t is sufficient if the witness's testimony gives the trier of fact a false impression." *Ex parte Ghahremani*, 332 S.W.3d 470, 477 (Tex. Crim. App. 2011). The rules against use of "perjured" testimony to obtain a conviction "are not aimed at preventing the crime of perjury—which is punishable in its own right—but are designed to ensure that the defendant is convicted and sentenced on truthful testimony." *Id.* at 477–78.

Accordingly, under this standard, "[w]e review the record to determine if the State 'used' the testimony, whether the testimony was 'false,' whether the testimony was 'knowingly used,' and if these questions are affirmatively answered, whether there is a reasonable likelihood that the false testimony could have affected the judgment of the jury." *Espinosa v. State*, 328 S.W.3d 32, 38 (Tex. App.—Corpus Christi-Edinburg 2010, pet. ref'd) (quoting *Ramirez v. State*, 96 S.W.3d 386, 394–95 (Tex. App.—Austin 2002, pet. ref'd)).

**B.    Analysis**

Appellant argues in his brief on appeal that the State "was informed by [Nadia] that she had falsely accused appellant of sexual abuse and repudiated statements made to the employees of the Child Assessment Center, Child Protective Services, and her school that she stated were lies." He argues that the State called Nadia to testify at trial "even thought the prosecutor was aware she would deny

12

appellant had abused her and that she lied during the pretrial investigation of the case," while at the same time, the State "introduced testimony of witnesses, their reports, and records of Texas Children's Hospital and the Child Assessment Center" that "contained statements [Nadia] made but later repudiated as lies."

Thus, appellant points to contradictions or inconsistencies in the State's evidence to support his contention that it knowingly used perjured testimony to procure his conviction. We observe, however, that "[w]hether evidence is false turns on whether the jury was left with a misleading or false impression after considering the evidence in its entirety." *Ex parte Chaney*, 563 S.W.3d 239, 263 (Tex. Crim. App. 2018). Looking at the entirety of the evidence presented by the State, as set out above, we cannot say that the jury was left with a misleading or false impression. *See id.*; *Ex parte Ghahremani*, 332 S.W.3d at 477. The State presented evidence regarding Nadia's initial outcry of abuse, her subsequent attempt to recant to the prosecutors that resulted in her reaffirming her allegations before trial, the pressures that she faced from her mother and appellant, and her testimony at trial recanting her initial claims. *See Haywood v. State*, 507 S.W.2d 756, 760 (Tex. Crim. App. 1974) (rejecting appellant's argument that police officer's inconsistent testimony constituted knowing use of false testimony by State and observing that "[t]he credibility of the witness was an issue to be determined by the jury"); *see also McLemore v. State*, No. 05-16-00378-CR, 2017 WL 1360227, at *2 (Tex. App.—

13

Dallas Apr. 12, 2017, pet. ref'd) (mem. op., not designated for publication) (holding that use of inconsistent testimony does not necessarily establish that State knowingly used perjured testimony).

The jury was thus presented with the full picture of the evidence against appellant, and it was charged with determining which testimony it found truthful. *See Ex parte Ghahremani*, 332 S.W.3d at 477–78 (stating that purpose of rules against knowing use of perjured testimony was to ensure that defendant is convicted and sentenced on truthful testimony).

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.

Richard Hightower
Justice

Panel consists of Justices Kelly, Landau, and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).