**Opinion filed July 25, 2024**



In The

# Elebenth Court of Appeals

_____

## Nos. 11-22-00271-CR & 11-22-00272-CR

_____

### MICHAEL SHAIDEN HUMPHRIES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause Nos. CR28439 & CR28440**

## M E M O R A N D U M   O P I N I O N

Appellant, Michael Shaiden Humphries, was charged with one count of burglary of a habitation with intent to commit aggravated assault and one count of tampering with or fabricating physical evidence. *See* TEX. PENAL CODE ANN. § 30.02(a)(1), (3), (d) (West 2019), § 37.09(a)(1), (c) (West Supp. 2023). Appellant pleaded not guilty to the charge for burglary of a habitation with intent to commit aggravated assault. Instead, Appellant entered an open plea of guilty to the

lesser-included-offense of burglary of a habitation. *See* PENAL § 30.02(c)(2), (d). Appellant also entered an open plea of guilty to the charge of tampering with or fabricating physical evidence.

The State declined to waive going forward the charged offense of burglary of a habitation with intent to commit aggravated assault. The trial court conditionally accepted Appellant's open pleas of guilty pending the presentation of evidence. The cases proceeded to a bench trial in a unified proceeding, and the trial court found Appellant guilty of burglary of a habitation with intent to commit aggravated assault and tampering with or fabricating physical evidence. The trial court sentenced Appellant to confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of twenty years for the conviction for burglary of a habitation with intent to commit aggravated assault and a term of ten years for the conviction for tampering with or fabricating physical evidence. The trial court ordered that the sentences run concurrently.

In Appellant's first issue, he asserts that the trial court abused its discretion in admitting evidence that the State did not timely disclose evidence during discovery under *Brady* and Article 39.14 of the Texas Code of Criminal Procedure.[1] *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(h) (West Supp. 2024); *Brady v. Maryland*, 373 U.S. 83 (1963). In his second issue in each case, Appellant challenges the voluntariness of his pleas, asserting that they were entered without his knowledge of the complained-of evidence.[2] Specifically, Appellant alleges that he did not have notice of impeachment evidence as addressed in his first issue, and that the absence

---

[1]Appellant submitted two briefs to address each conviction independently. Appellant's first issue is identical as to both cause numbers.

[2]Appellant's second issue in each brief challenges the voluntariness of his plea to each charge, respectively. In Cause Number 11-22-00272-CR, Appellant challenges his pleas of not guilty to the charged offense of burglary of a habitation with intent to commit aggravated assault and guilty to the lesser included offense of burglary of a habitation. Similarly, in Cause Number 11-22-00272-CR, Appellant challenges his plea of guilty to the charge of tampering with or fabricating physical evidence.

of this notice would have affected his strategy with respect to the pleas that he entered. We affirm.

*Background Facts*

On July 7, 2021, Appellant was sitting in a car outside of his ex-girlfriend's apartment complex when he saw her and John Murray leave in separate vehicles. Appellant testified that he followed them to a nearby gas station and that his ex-girlfriend refused to speak with him. Appellant said he left the gas station at the same time as his ex-girlfriend and proceeded down the same highway following her until he had to make a turn to go home. Appellant testified that, a short time later, he went looking for his ex-girlfriend's car by driving down the highway they had just traveled. Appellant testified that, after spotting both cars at the Murray house, he stabbed one of the tires on John's Mustang.

Appellant said that on the evening of July 9, after days of heavy drinking, he "decided" to return to the Murray home. Appellant testified that he brought a loaded .22 caliber rifle with "the intention to hurt" John. Appellant parked on a nearby road and taped a note to the car window that read "out of gas" to avoid suspicion. Appellant then used the same tape to secure a flashlight to the rifle and to cover his wrists and ankles to avoid leaving "DNA evidence."

Appellant testified that he went to the Murray home and spray painted "DON'T CHEAT ON A DEALERS $$$ —C" on the garage door to point toward a different motive for the incident. Appellant said he then canvased the home with the rifle to find a discrete point of entry. The Murray's surveillance cameras captured footage of Appellant outside the home. Appellant testified that he found a window on the side of the home with no motion sensor lights. He cut the window's screen with a knife that he routinely carried, and he entered the home. The window led into the bathroom that is attached to John's bedroom. Appellant said that he left his rifle

3

on the ground outside and forgot to retrieve it before entering through the window. Appellant testified that, once inside the bedroom, he unplugged the television to darken the room. Appellant said that he still intended to harm John, but he abandoned his plan when he saw his ex-girlfriend in the bed. He then exited the home without incident.

Appellant testified that he realized he had left his rifle behind, and he made his way back toward the Murray home to retrieve it. Appellant admits that he saw law enforcement vehicles present once he arrived back at the Murray home, but he was able to retrieve the rifle without being noticed. He testified that he later hid the rifle in a stock tank nearby. Appellant was able to avoid capture by law enforcement following the incident, but he turned himself in later that evening.

John also testified about the incident and his recollections of the events. Contrary to Appellant's testimony, John stated that he was awakened to Appellant tripping over a dog cage in the room, and he heard a "click." His familiarity with firearms led him to believe it was the sound of a "gun jamming." John testified that he never saw a firearm while Appellant was in the home, but his experience made him think that Appellant "had a gun in the room." John testified that he got up and went toward Appellant, who ran to the bathroom and exited through the window.

Deputy Chris Angel with the Brown County Sheriff's Office was dispatched to the Murray home. Deputy Angel testified that he initially saw Appellant's rifle in the yard "approximately 15 to 20 feet from the window." The rifle was visibly jammed, and he stated that his experience led him to believe it was the result of a double feed of ammunition into the chamber.[3] After photographing the rifle, Deputy Angel went to his vehicle to get gloves, but the rifle was missing when he returned.

---

[3]Officer Angel explained that "a double feed is when you're trying to load . . . ammunition into the chamber [and] when you pull the slide back . . . it sends two up."

Deputy Angel testified that he spoke to John Murray, his parents (who lived in the home), and Appellant's ex-girlfriend. Deputy Angel said that they had told him "about seeing the subject with the gun." Appellant's attorney objected to the statement on hearsay grounds and told the trial court that he was unaware of anything that would support Deputy Angel's testimony that the rifle was brought into the home. The trial court overruled the objection and permitted the line of questioning to continue as to the demeanor of the victims.

Wylie Murray, John's father, testified that John woke him up and told him, "[t]here's somebody in the house with a gun." Appellant's trial attorney did not object to Wylie's testimony. Telise Murray, John's mother, also testified that John frantically ran into the bedroom and said an intruder had come into his room with a gun. Telise said that she instinctively grabbed her firearm before searching for the intruder. Appellant's trial attorney did not object to Telise's testimony.

Investigator Charles Woods with the Brown County Sheriff's Office arrived at the Murray home after the firearm disappeared. Appellant called Investigator Woods to testify in order to question him about the inconsistencies between the complaint and supplemental narrative he filed and the Murrays' testimony. Appellant's trial attorney asked Investigator Woods why the documents did not include the statements from Wylie and Telise about John hearing a firearm jamming or communicating to each other that there was an intruder with a gun. At one point, Appellant's trial attorney suggested that Appellant was unaware of this information and questioned Investigator Woods about whether he believed Appellant's knowledge of it might have changed the outcome of the case. Investigator Woods responded that it was a possibility.

After Investigator Woods's testimony, the trial court inquired about any potential Article 39.14 issues since Appellant's trial attorney suggested that he was

not informed that John told Wylie and Telise that there was a person with a gun in the house. Appellant's trial attorney said that the information in the Murrays' testimony about a gun being in the home was not provided to Appellant. The State responded that the information from John was disclosed to Appellant before his open plea, but the information from Wylie and Telise was not known by the State prior to their testimony. Appellant's trial attorney maintained that he did not know about any evidence of a "click," as described by John. After a discussion about the admissibility of the contested evidence, the trial court determined that the State had violated its discovery obligation as to the testimony of John and that his statement would be "excluded and [not] considered by the [c]ourt." The trial court stated that it would not exclude Wylie's and Telise's testimony because it had no evidence that the State was aware of the additional information prior to their testimony.

After closing arguments, the trial court announced its basis for finding Appellant guilty. As to the charged offense of burglary, the trial court stated:

> "It doesn't matter if the gun went in or not. You spent all of this time dancing around that issue, but you clearly went in with the intent to commit aggravated assault. You told us that. You said when you loaded the gun, you went in with the plan of hurting him, John Murray, and you did so when you were loading that gun. Clearly that was your intent. When you entered into the residence, you admitted that your intent was still to do that. And when you got into the room, you admitted your intent was to still do that. As you said, you didn't have the gun and you didn't have the knife, but you were still going to do it.
>
> So, there is no doubt that you had the intent to commit the felony offense of aggravated assault."

The trial court subsequently found Appellant guilty of both offenses as charged in the indictments.

*Analysis*

In his first issue, Appellant asserts that the trial court abused its discretion in admitting and considering evidence that the State failed to timely disclose during

6

discovery. *See* CRIM PROC. art. 39.14(h), (k); *Brady*, 373 U.S. at 87. Specifically, Appellant contends that, while the trial court correctly excluded John's testimony that he saw a man with a gun in the home, the trial court erroneously allowed Wylie and Telise to testify that John told them he saw a man with a gun in the home. Appellant analogizes the testimony of Wylie and Telise Murray with the "fruit of the poisonous tree" doctrine that applies to evidence obtained illegally. However, Appellant provides no case law to support the proposition that the doctrine is applicable to an Article 39.14 disclosure objection.

The State contends that John's statement that there was a gun in the house is not exculpatory, mitigating, or impeachment evidence that requires disclosure under Article 39.14. Rather, the State asserts that (1) the substance of the testimony is inculpatory; and (2) the testimony at trial was not inconsistent with the witness' prior statements. Further, the State maintains that it told Appellant's trial attorney about John's statement that a gun was in the home before Appellant's pleas were entered, and that it had no knowledge that John told his parents about seeing a man with a gun in the home prior to their testimony at trial. Assuming, without deciding, that Appellant has preserved his point of error for our review, we conclude that the trial court did not abuse its discretion.[4]

---

[4]We note that Appellant did not request a continuance at any point. When previously withheld evidence is disclosed at trial, the defendant has an opportunity to request a continuance. *Williams v. State*, 995 S.W.2d 754, 762 (Tex. App.—San Antonio 1999, no pet.). A defendant's failure to request a continuance waives any *Brady* violation. *Young v. State*, 183 S.W.3d 699, 706 (Tex. App.—Tyler 2005, pet. ref'd); *Gutierrez v. State*, 85 S.W.3d 446, 452 (Tex. App.—Austin 2002, pet. ref'd); *Williams*, 995 S.W.2d at 762. Likewise, a defendant's failure to request a continuance also waives any violation under Article 39.14(h). *See O'Kane v. State*, No. 04–16–00526–CR, 2017 WL 3159462, at *3 (Tex. App.—San Antonio July 26, 2017, no pet.) (mem. op., not designated for publication) ("By failing to file a written, sworn motion for continuance, [the defendant] failed to preserve error" based on the State's failure to comply with Article 39.14(h)); *see also Prince v. State*, 499 S.W.3d 116, 120–21 (Tex. App.—San Antonio 2016, no pet.) (same); *Cadena v. State*, No. 11-22-00225-CR, 2023 WL 8459093, at *5–6 (Tex. App.—Eastland Dec. 7, 2023, no pet.) (mem. op., not designated for publication).

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). We will uphold a trial court's evidentiary ruling on appeal if it is correct on any theory of law that finds support in the record. *Gonzalez v. State*, 195 S.W.3d 114, 125–26 (Tex. Crim. App. 2006); *Dering v. State*, 465 S.W.3d 668, 670 (Tex. App.— Eastland 2015, no pet.).

In *Brady v. Maryland*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87; *see also Ex parte Lalonde*, 570 S.W.3d 716, 724 (Tex. Crim. App. 2019). Thus, *Brady* is violated when three requirements are satisfied: (1) the State suppressed evidence; (2) the suppressed evidence is favorable to the defendant; and (3) the suppressed evidence is material. *Lalonde*, 570 S.W.3d at 724.

Article 39.14 of the Texas Code of Criminal Procedure imposes broader discovery protections for criminal defendants, "making disclosure the rule and non-disclosure the exception." *See Watkins v. State*, 619 S.W.3d 265, 277 (Tex. Crim. App. 2021); *see also* CRIM PROC. art. 39.14. As the Court of Criminal Appeals explained in *Watkins*, Article 39.14(h) creates "an independent and continuing duty for prosecutors to disclose evidence that may be favorable to the defense even if that evidence is not 'material.'" *Watkins*, 619 S.W.3d at 277. Subsection (k) of Article 39.14 also places a duty upon the prosecution to promptly disclose any

additional material, favorable evidence discovered "at any time before, during, or after trial."  CRIM PROC. art. 39.14(k).[5]

Upon review of the Article 39.14 hearing, the trial court determined that there was no evidence that the State was aware of the additional information revealed in Wylie's and Telise's testimony before the trial began.  As a result, the State did not violate Article 39.14 or the principles of *Brady* by failing to disclose information that Wylie and Telise had never provided to the State or law enforcement in the first place.  *See* CRIM. PROC. art. 39.14(h) ("[T]he State shall disclose to the defendant any exculpatory, impeachment, or mitigating . . . information *in the possession, custody, or control of the state* that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged.") (emphasis added); *Pena v. State*, 353 S.W.3d 797, 810 (Tex. Crim. App. 2011) ("*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist.") (quoting *Hafdahl v. State*, 805 S.W. 2d 396, 399 n.3 (Tex. Crim. App. 1990)); *see also Wells v. State*, 675 S.W.3d 814, 831 (Tex. App.—Dallas 2023, no pet. h.) ("*Brady* does not require the State to disclose exculpatory information that it does not know exists.  Nor does the State have any duty to seek out such information independently on the defendant's behalf.") (citations omitted).  "Where there is no showing that the matters sought to be discovered are material, or that the items sought are in the possession of the prosecution, the defendant is not entitled to relief on appeal." *Turpin v. State*, 606 S.W.2d 907, 915 (Tex. Crim. App. 1980) (quoting *Brem v. State*, 571 S.W.2d 314, 321–22 (Tex. Crim. App. [Panel Op.] 1978)).  Accordingly, the trial court did not abuse its discretion in admitting the testimony of Wylie and Telise

---

[5]We note that in *State v. Heath*, the Texas Court of Criminal Appeals recently held that the disclosure requirements of Article 39.14 extend to items in the possession of law enforcement.  No. PD-0156-22, 2024 WL 2952387 (Tex. Crim. App. June 12, 2024).

when it found that there was no evidence to support a discovery violation by the State.

While we find no error in the trial court's admission of the testimony of Wylie and Telise, the standard of review for discovery violations under Article 39.14 requires that we analyze harm separately. *Fortuna v. State*, 665 S.W.3d 861, 867 (Tex. App.—Houston [14th Dist.] 2023, no pet.); s*ee Watkins*, 619 S.W.3d at 290. A violation of the discovery rules in Article 39.14 is a state statutory error, and we analyze harm accordingly and not as constitutional error. Non-constitutional errors that do not affect an appellant's substantial rights must be disregarded. TEX. R. EVID. 103(a); TEX. R. APP. P. 44.2(b); *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

Error affects substantial rights in a jury trial only if the error had a substantial and injurious effect or influence in determining the jury's verdict. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). However, to determine whether an error affected a substantial right in a non-jury case, we consider whether the error denied the complaining party some right to which he was legally entitled. *See Johnson v. State*, 72 S.W.3d 346, 348 (Tex. Crim. App. 2002). In determining harm, we consider the entire record. *See id.* at 349. If it appears that a non-constitutional error did not influence the result or had only a slight effect, we should not overturn a criminal conviction. *See Motilla v. State*, 78 S.W.3d 352, 360 (Tex. Crim. App. 2002).

The weight of the evidence of a defendant's guilt is a relevant factor in conducting a harm analysis under Rule 44.2(b). *Id.*; *See* TEX. R. APP. P. 44.2(b). The character of the alleged error and how it may be considered in connection with other evidence in the case are also relevant. *Id.* at 359.

Upon finding that the State failed to disclose the new information from John's testimony as required by Article 39.14, the trial court exercised its discretion by excluding the evidence, thereby providing Appellant with an immediate remedy. *See* CRIM. PROC. art. 39.14(h), (k). When a prosecutor willfully withholds evidence in violation of a discovery order, exclusion of the evidence is the proper remedy. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006). The excluded evidence cannot support an assertion that Appellant's substantial rights were affected because any error was cured with its exclusion from admission and consideration by the trial court. Further, we have already concluded that the inclusion of the statements from Wylie's and Telise's testimony were not offensive to the State's responsibilities under Article 39.14 and therefore cannot stand as error that denied Appellant any right to which he was legally entitled. *See Motilla*, 78 S.W.3d at 360; *see also* TEX. R. APP. P. 44.2(b).

Though not dispositive, the weight of other evidence of guilt is a relevant factor, and the trial court provided an explanation that reflected its reliance on the substantial evidence beyond the testimony of Wylie and Teslise. The trial court specifically determined that John's statement to his parents about seeing a gun in the house was not necessary to prove Appellant's intent to commit aggravated assault. Accordingly, there was no harm that resulted from any error with respect to Wylie's and Telise's testimony. We overrule Appellant's first issue in both cause numbers.

In his second issue, Appellant challenges the voluntariness of his pleas. Appellant alleges that his pleas of not guilty to the charged offense of burglary with intent to commit aggravated assault and guilty to a lesser-included offense were involuntary because they were entered without knowledge that John saw a man with a gun in the Murray home. Appellant challenges the voluntariness of his plea of guilty to the charged offense of tampering with or fabricating physical evidence for

the same reason. He contends that this evidence was impeachment evidence that might have affected his pleas had it not been withheld.

A guilty plea involves, among other things, a waiver of a defendant's rights to be tried by a jury, to confront his accusers, to have a speedy and public trial, and to invoke his privilege against compulsory self-incrimination. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969); *Ex parte Palmberg*, 491 S.W.3d 804, 807 (Tex. Crim. App. 2016) (orig. proceeding). To be effective, a waiver of those rights must be made voluntarily, knowingly, and intelligently. *Ex parte Barnaby*, 475 S.W.3d 316, 322 (Tex. Crim. App. 2015). To be knowing and voluntary, a guilty plea must be made with sufficient awareness of the relevant circumstances and likely consequences. *McMann v. Richardson*, 397 U.S. 759, 766 (1970). When the record shows that a defendant was properly admonished, it presents a prima facie showing that the guilty plea was entered knowingly and voluntarily. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998); *Ex parte Gibauitch*, 688 S.W.2d 868, 871 (Tex. Crim. App. 1985); *see* CRIM. PROC. art. 26.13 (West Supp. 2023). The burden then shifts to the defendant to prove that "he did not fully understand the consequences of his plea such that he suffered harm." *Martinez,* 981 S.W.2d at 197 (citing *Ex parte Gibauitch*, 688 S.W.2d at 871). If the defendant "attests during the initial plea hearing that his plea is voluntary," the defendant has a "heavy burden" on appeal to prove that his plea was involuntary. *Houston v. State,* 201 S.W.3d 212, 217 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (quoting *Coronado v. State*, 25 S.W.3d 806, 809 (Tex. App.—Waco 2000, pet. ref'd)).

A defendant's voluntary guilty plea is not contingent upon his awareness of the full dimension of the State's case. *Palmberg*, 491 S.W.3d at 809. "While any defendant who is deciding whether or not to plead guilty would certainly prefer to be apprised of his exact odds of an acquittal at trial, the reality is that every defendant

who enters a guilty plea does so with a proverbial roll of the dice." *Id.* The more information a defendant has beforehand about the State's case, the better the opportunity for him to make a "wise" plea. *United States v. Ruiz*, 536 U.S. 622, 629 (2002). "But even if the defendant is less well-informed, as long as he has a sufficient awareness of his circumstances—including an awareness that some facts simply remain unknown to him or are undetermined as of the time of the plea—his potentially unwise plea is still a voluntary one." *Palmberg*, 491 S.W.3d at 809.

Appellant contends that his pleas were not voluntary because he was unaware of the new information in the Murrays' testimony about an intruder with a gun. Appellant's assertion rests upon his allegation that the State failed to properly disclose the evidence as required by Article 39.14. *See* Crim Proc. art. 39.14(h), (k). The trial court found that the State had not fulfilled its obligation to Appellant as to John's testimony and excluded the new evidence. However, the trial court also determined that there was no evidence to suggest that the State was aware of the additional information revealed in the testimony of Wylie and Telise prior to its introduction at trial. As previously noted, the State does not have an obligation to disclose information that it was never provided. *See* Crim. Proc. art. 39.14(h) ("[T]he State shall disclose to the defendant any exculpatory, impeachment, or mitigating . . . information *in the possession, custody, or control of the state* that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged.") (emphasis added).

When Appellant entered his pleas after being admonished by the trial court, he did so with the awareness at that time that there may be undetermined facts of the case. *See Palmberg*, 491 S.W.3d at 809. The introduction at trial of those previously undetermined facts, absent a violation of the State's discovery obligations, cannot support the assertion that his plea was involuntary. *See Brady v. United States*, 397

U.S. 742, 757 (1970) ("A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action."). Accordingly, we overrule Appellant's second issue in each case.

*This Court's Ruling*

We affirm the judgments of the trial court.


JOHN M. BAILEY<br>CHIEF JUSTICE


July 25, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.