COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| JOEVONNE PRINCE JUAREZ | § | No. 08-23-00297-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 144th Judicial District Court |
| | § | |
| THE STATE OF TEXAS, | | of Bexar County, Texas |
| | § | |
| Appellee. | | (TC# 2022CR0616) |
| | § | |
| | § | |

## MEMORANDUM OPINION

A jury found Appellant Joevonne Prince Juarez guilty of one count of aggravated sexual assault of a child. In four related issues, Appellant contends (1) the trial court abused its discretion by overruling his relevancy objection and allowing an outcry witness to testify regarding her own history of sexual abuse, (2) his due process rights were violated because the State improperly relied on false testimony from the outcry witness, (3) the trial court erred by denying his motion for new trial based on his claim that the outcry witness provided false testimony, and (4) the trial court abused its discretion by failing to hold a hearing on Appellant's motion for new trial. For the

1

following reasons, we affirm the trial court's judgment.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant was indicted on one count of aggravated sexual assault of N.G., a child younger than 14 years, by allegedly causing the penetration of her sexual organ with his sexual organ.

### A. N.G.'s trial testimony

At trial, N.G., who was 11 years old at the time of the alleged assault and 14 years old on the day of trial, testified that on November 26, 2020, she was at the home of her grandmother, Carolina, celebrating Thanksgiving along with other family members, including Appellant, her then-17-year-old cousin.[2] According to N.G., Appellant had enticed her into a back bedroom in Carolina's house on multiple occasions, where he had touched her chest and "private parts," beginning sometime before she turned eight years old. N.G. recalled that she was sitting on the couch after Thanksgiving dinner when Appellant touched her shoulder, indicating she should follow him into a back bedroom.[3] N.G. complied, and when the two were in the room with the door shut, Appellant instructed her to take off her clothes.[4] N.G. recalled that she stripped down to her underwear. Appellant then pulled aside her underwear, touched her private area, and inserted

---

[1] This case was transferred from the Fourth Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. *See* Tex. Gov't Code Ann. § 73.001. We decide the case in accordance with the precedent of the transferor court to the extent it conflicts with our own. Tex. R. App. P. 41.3.

[2] To protect the victim's identity, we refer to her by the initials N.G. in place of her true name. *See* Tex. R. App. P. 9.10.

[3] At trial, Carolina and one of her daughters testified that Carolina slept on the couch in her living room because her three bedrooms were used for storage.

[4] N.G later told a law enforcement officer that Appellant had pulled down her clothes.

his penis into her vagina but did not ejaculate.[5] She got dressed and left the room to join the rest of the family but did not inform anyone of what had occurred at the time.

### B. N.G.'s outcry to her mother

N.G.'s mother, Kimberly, testified at trial that she was unaware of the Thanksgiving incident but that she had noticed N.G.'s behavior changed after Thanksgiving—N.G. had become moodier and started cutting herself. In January 2021, N.G. told her best friend, Brianna, that Appellant raped her during the Thanksgiving incident.[6] Brianna told Kimberly about N.G.'s statement, and Kimberly immediately called her sister, Yvonne (Appellant's mother), to inform her of the allegation. During their phone conversation, Yvonne questioned Appellant about whether he had engaged in sexual intercourse with N.G. He denied the allegation.

Kimberly, who served as an outcry witness at trial, testified that she questioned N.G. about the matter, but N.G. initially denied that anything had occurred.[7] However, Kimberly recalled N.G. appearing anxious and crying, and she therefore pressed N.G. to tell her if something had happened. Upon further questioning, N.G. informed Kimberly that Appellant had been touching her inappropriately "over the years" and had put his penis in her mouth on one occasion. N.G. told

---

[5] At various times during her testimony, N.G. used different language to describe the incident, indicating Appellant had placed his "private area in [my] private area." Upon questioning, N.G. clarified she was referring to his penis and her vagina.

[6] Brianna did not testify at trial.

[7] The parties agreed Kimberly was the first person over 18 to whom N.G. reported the abuse and was properly an outcry witness. Tex. Code Crim. Pro. Ann. art. 38.072 § 2(a)(1)–(3) (An outcry witness is "the first person, 18 years of age or older, other than the defendant, to whom [a child victim of sexual abuse] made a statement about the offense."). Although a child's out-of-court statements regarding an offense would normally be considered inadmissible hearsay, an outcry witness may testify as to the child's statements at trial if they fit within the requirements of the outcry witness exception to the hearsay rule. *Id*. § 3(b); *see also Bays v. State*, 396 S.W.3d 580, 585 (Tex. Crim. App. 2013) (discussing the nature of the outcry witness exception to the hearsay rule).

her Appellant had "pushed her into the back room . . . [m]ade her take her clothes off [and] penetrate[d] her" during the Thanksgiving get-together at Carolina's house. N.G. indicated that she had not wanted to tell Kimberly about the abuse because she was afraid it would "hurt" her.

### C. Kimberly's testimony about her own history of sexual abuse

As explained in more detail below, over Appellant's relevancy objection, Kimberly was permitted to testify to her own history of childhood sexual abuse. The issue arose after Kimberly testified that Carolina had been an abusive mother, both emotionally and physically, which was why she became estranged from her family for several years as an adult.[8] The prosecutor then asked Kimberly if she had been abused in other ways as a child, and defense counsel objected on relevancy grounds. In response, the State began to explain that Kimberly had been abused in Carolina's home and that Carolina was to be a defense witness in the case. The trial court interrupted the prosecutor's explanation, and without further discussion, overruled the objection.

Kimberly was permitted to testify that Carolina's boyfriend (the boyfriend) had sexually assaulted her when she was between the ages of four and six. Kimberly averred that although she believed Carolina had reported the incident and the boyfriend had been arrested and charged, she believed Carolina later contacted the district attorney's office asking them to dismiss the charges after the boyfriend told Carolina he would move in with her. Kimberly explained that she pressed N.G. to make her outcry, informing N.G. she did not want to "sweep it under the rug" if something had happened. Although Kimberly was not certain if N.G. understood the meaning, she explained at trial she made the statement because Carolina had "hid a lot of abuse" when she was growing

---

[8] Kimberly recalled leaving her mother's house at the age of 19 and did not see her again until age 24, when they re-established a somewhat tenuous relationship after a death in the family.

up, and she "didn't want that life for [N.G.]." Instead, she wanted N.G. to tell her if something happened so that "she could be okay."

### D. N.G.'s reports to law enforcement and ChildSafe employees

Kimberly testified that she contacted the police immediately after N.G. made her outcry, and a patrol officer interviewed her and N.G. the same day. N.G. informed the officer that Appellant had penetrated her vagina with his penis on Thanksgiving and that he had previously touched her inappropriately. She indicated that the penetration was not consensual, as "she didn't want to do it." Based on his training, experience, and assessment of N.G.'s demeanor, the officer believed she was credible.

At the officer's suggestion, Kimberly took N.G. to ChildSafe in San Antonio, a children's advocacy center, where she was examined by a Sexual Assault Nurse Examiner (the SANE nurse). The SANE nurse testified that N.G. was initially hesitant to speak to her but eventually informed her that Appellant had "sexually abused" her by touching her inappropriately and later by "forced intercourse," describing it as vaginal penetration with Appellant's penis, which N.G. reported as hurting a lot. N.G. told her that she did not want to tell her mother earlier because she "didn't want to make her sad" and because she "didn't want anything bad to happen [to Appellant] because he's still young."

The SANE nurse explained that a child-victim of sexual abuse will often display a variety of behavioral symptoms, which indicate they are having trouble coping with the abuse, and that N.G. had reported at least two such symptoms—problems sleeping and cutting her arm—which N.G. reported had started one month after the Thanksgiving incident.[9] N.G. was also seen by a

---

[9] The SANE nurse reported observing "linear scars on [N.G.'s] left arm."

clinical therapist at Child Safe, who testified at trial regarding N.G.'s outcry of sexual abuse and believed that N.G. was sincere in her report.

N.G. was also interviewed by a detective in the special victims unit and informed her that Appellant started touching her inappropriately at age seven while they were at their grandmother's house, penetrated her mouth on one occasion, and penetrated her vagina with his penis on Thanksgiving. She also believed N.G.'s outcry was credible.

### E. Appellant's defense

At trial, Appellant raised a fabrication defense, contending N.G. had fabricated the story in part due to manipulation by Kimberly, positing that Kimberly was angry with her family due to the alleged abuse she suffered as a child and her belief that Carolina failed to protect her. At trial, Carolina acknowledged her boyfriend sexually abused Kimberly as a child, but testified that, contrary to Kimberly's suggestion, she did everything she could to protect Kimberly by reporting the matter to police and never seeing the boyfriend again. However, Carolina reported that she took Kimberly to an "agency" where someone told her Kimberly had not been raped. She therefore did not follow up to determine if the boyfriend had been prosecuted, explaining that she believed the "court" would take care of the matter. At trial, both Yvonne and Carolina testified that due to the past abuse and other issues Kimberly had with the family, she was periodically estranged from them. Defense counsel used their testimony during closing arguments to suggest Kimberly may have had a motive to influence N.G. to make a false outcry against Appellant.[10]

---

[10] As well, defense counsel suggested N.G. may have been influenced by the fact that Kimberly admittedly spoke frankly with her children about sexual matters and that she reviewed sex toys online as part of her livelihood.

In addition, both Yvonne and Carolina testified that given the size and configuration of Carolina's house, they believed it would have been virtually impossible for the abuse to have taken place without someone observing it.

### F.    The jury's verdict and Appellant's motion for new trial

The jury found Appellant guilty of aggravated sexual assault of a child as charged in the indictment, and the trial court sentenced him to 45 years in prison and assessed a $10,000 fine. Appellant filed a motion for new trial, alleging (1) the trial court erred by admitting Kimberly's testimony regarding her own history of sexual abuse, contending it was irrelevant to the issue of whether Appellant had abused N.G., and (2) Kimberly provided false testimony when she claimed that Carolina tried to have the charges against her boyfriend dismissed.

In support, Appellant attached an affidavit from Carolina averring that Kimberly's testimony that she attempted to withdraw the charges against her boyfriend was "completely false." Carolina explained that following trial, when she learned of Kimberly's testimony, she contacted the district attorney's office to obtain paperwork from her boyfriend's case, which Appellant attached to his motion.[11]

The paperwork indicated that the boyfriend pled to one count of indecency with a child in 1995, and the trial court placed him on deferred adjudication community service probation for four years.[12] In her affidavit, Carolina expressed her belief that the paperwork demonstrated her

---

[11] At trial, Carolina testified that she did not recall the boyfriend's real name and that he had falsely told her his name was "Juan." Kimberly, however, testified that she believed Carolina still had letters from the boyfriend at her house. In her affidavit, Carolina averred this was not true, but she did have a letter from the district attorney's office with his name on it, which allowed her to request the paperwork from his case.

[12] In her statement to the police, which was in the attached paperwork, Carolina told police she had witnessed her boyfriend fondling Kimberly, who was seven years old at the time, when Kimberly was in bed with her and her boyfriend. That prompted her to call the police. Kimberly later told her the boyfriend had abused her before that

boyfriend "was prosecuted and that [she] did not withdraw the charges." She further indicated she was "sorry" that Kimberly did not believe she took steps to protect her, and she did not know why Kimberly felt that way.

In his motion, Appellant argued this evidence established that Kimberly had provided false testimony regarding Carolina's actions following her outcry, and the State relied on this false testimony to attack Carolina's credibility. In turn, he argued this attack was material to the State's case and contributed to the verdict in violation of his due process rights.

Although Appellant requested an evidentiary hearing, his motion was overruled by operation of law without a hearing. This appeal followed.

## II. ISSUES ON APPEAL

Appellant raises the following four related issues on appeal: (1) the trial court erred by allowing Kimberly to testify regarding her own history of sexual abuse, as it was not relevant to the charge against him; (2) the State improperly relied on Kimberly's "false" testimony regarding Carolina's attempt to have the charges against her boyfriend dismissed; (3) the trial court erred by denying his motion for new trial; and (4) the trial court failed to hold a hearing on his motion for new trial.

## III. THE ADMISSION OF KIMBERLY'S TESTIMONY

In his first issue, Appellant contends the trial court erred in admitting Kimberly's testimony regarding her own history of sexual abuse because it was irrelevant to Appellant's case. The State counters that Appellant failed to preserve error, asserting that although Appellant raised an initial

---

incident.

objection to Kimberly's testimony, he failed to lodge a running objection and did not object when the same evidence was admitted at other points in the trial. We agree with the State.

## A. Error preservation principles

To preserve error regarding the improper admission of evidence for appellate review, the complaining party must make a "timely and specific objection to the complained-of evidence." *Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010) (citing Tex. R. App. P. 33.1(a)(1)(A)). In addition, the complaining party must make an objection every time the complained-of evidence is offered "unless the complaining party obtains a running objection or obtains a ruling on his complaint in a hearing outside the presence of the jury." *See Lopez v. State*, 253 S.W.3d 680, 684 (Tex. Crim. App. 2008); *see also Jett v. State*, 319 S.W.3d 846, 855 (Tex. App.—San Antonio 2010, no pet.) (recognizing same). Stated otherwise, any error "in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (quoting *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). Thus, a party may not complain on appeal about improperly admitted evidence if the same or similar evidence is admitted without objection at another point in the trial, either before or after the admission of the disputed evidence. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (en banc) ("Our rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling."). Nor may a party complain when he has either agreed to the admission of the evidence or elicited the evidence himself. *See Estrada v. State*, 313 S.W.3d 274, 302 (Tex. Crim. App. 2010) (where appellant stated he had "no objection" to the admission of evidence, he "failed to preserve any error in the admission [of the] evidence"); *see also Peralta v. State*, 338 S.W.3d 598, 608–09

(Tex. App.—El Paso 2010, no pet.) (any error in admitting police officer's testimony regarding victim's out-of-court statements under the excited-utterance exception was not preserved where appellant "elicited the complained of testimony himself on cross examination").

### B. Analysis

Here, Appellant's attorney made an initial objection when Kimberly first began to testify about the sexual abuse she suffered as a child. However, counsel did not obtain a running objection, did not object when evidence of Kimberly's assault was introduced into evidence at other points in the trial, and even elicited testimony on the subject herself.

First, defense counsel questioned Yvonne on direct examination regarding whether she was aware that Kimberly had "gone through something when she was younger." In response, Yvonne testified, without objection, that Kimberly had been assaulted by their mother's boyfriend. Yvonne testified that Carolina called the police, but before the police arrived to arrest the man, Yvonne's brothers, who Carolina had also called, came over and hit him. Yvonne also testified that she believed her mother broke up with the man after that and did not see him again. Yvonne was permitted to express her opinion that Carolina did not "brush it under the rug."

Subsequently, the State questioned Carolina on cross-examination regarding whether she had "once dat[ed] a man who sexually assaulted [her] daughter[.]" Without objection, Carolina testified at length about the steps she took after she learned of the assault, indicating she immediately contacted the police because she believed Kimberly and she never saw the man again. Upon further questioning by the State—again without objection—Carolina denied that her sons beat up the man, claiming the police arrested the man before her sons arrived.

10

During her closing arguments, defense counsel repeatedly referred to Kimberly's childhood abuse in support of Appellant's claim that N.G.'s allegations were the product of Kimberly's "manipulation." Defense counsel argued Kimberly pressed N.G. into making her outcry because she was "still angry and resentful about what happened to her and so now she's basically exaggerating and instilling this in her own daughter." Defense counsel further argued that because Kimberly believed her mother "brushed it under the rug," Kimberly was "hypersensitive about the abuse situation" and inclined to "jump to conclusions" in believing her daughter had also been abused.

Because Appellant not only failed to object when the State questioned Carolina about Kimberly's past abuse but expressly elicited evidence pertaining to the abuse from Yvonne, Appellant may not complain about the admission of the evidence on appeal. *See Lopez*, 253 S.W.3d at 684; *Jett*, 319 S.W.3d at 855; *Peralta*, 338 S.W.3d at 608–09.

Appellant's Issue One is overruled.

## IV. THE STATE'S ALLEGED RELIANCE ON FALSE TESTIMONY

In Issue Two, Appellant argues Kimberly's testimony that Carolina contacted the district attorney's office seeking dismissal of the charges against her boyfriend was false, and the State relied on this false testimony to obtain the conviction in violation of his due process rights. The State counters that there is nothing in the record to support a finding that Kimberly's testimony was false, and even if it was false, it was not material to the case such that his due process rights were violated. We conclude Appellant has failed to establish a due process violation under these circumstances.

## A. Standard of review and applicable law

"The Due Process Clause of [the] 14th Amendment can be violated when the State uses materially false testimony to obtain a conviction, regardless of whether it does so knowingly." *Ex Parte Lalonde*, 570 S.W.3d 716, 722 (Tex. Crim. App. 2019) (citing *Ex Parte Chabot*, 300 S.W.3d 768, 770–71 (Tex. Crim. App. 2009); *Ex Parte Napper*, 322 S.W.3d 202, 243 (Tex. Crim. App. 2010)); *see also Ex Parte Chavez*, 371 S.W.3d 200, 205-07 (Tex. Crim. App. 2012) (discussing the emergence of the rule that even an "unknowing" use of false testimony by the State may constitute a due-process claim). However, to rise to the level of a due process violation, the testimony must not only be false, "it must also be material." *Ex Parte Lalonde*, 570 S.W.3d at 722 (citing *Ex Parte Weinstein*, 421 S.W.3d 656, 665 (Tex. Crim. App. 2014)). The standard for determining if evidence was material is the same as the harmless-error standard for constitutional error. Thus, false testimony will be considered material and harmful "unless it can be determined beyond a reasonable doubt that the testimony made no contribution to the defendant's conviction or punishment." *Id*. (citing *Napper*, 322 S.W.3d at 241). Stated otherwise, false testimony is only considered material if there is a '"reasonable likelihood' that it affected the judgment of the jury." *Id.* (citing *Weinstein*, 421 S.W.3d at 665). In determining whether such a likelihood exists, we must examine the entire record. *See Ex Parte Chavez*, 371 S.W.3d at 209 (court determined that an "examination of the entire record does not reveal a reasonable likelihood that the jury was affected by the false testimony in assessing applicant's punishment").

## B. Analysis

As a preliminary matter, the State contends Kimberly's testimony cannot be considered false because the record does not contain any evidence of an "intent to deceive" the jury as would

12

be required to sustain a perjury conviction under the Penal Code.[13] The State argues that to the extent Kimberly misstated what occurred after her outcry, she did so innocently, contending "the evidence supports the idea that she was too young at the time to fully comprehend what happened after she out-cried to her mother" or she simply "did not have a complete memory of what happened" due to the passage of time. The question of Kimberly's intent, however, is irrelevant to the question of whether Appellant's due process rights were violated. As the Court of Criminal Appeals has explained, whether a witness committed perjury is distinct from whether the witness's testimony was false for purposes of determining a due process violation, as the prohibition against the State's use of false testimony is "designed to ensure that the defendant is convicted and sentenced on truthful testimony" rather than aiming to punish the witness for perjury. *Ex Parte Ghahremani*, 332 S.W.3d 470, 477–78 (Tex. Crim. App. 2011); *see also Ex Parte Chavez*, 371 S.W.3d at 208 (recognizing that a witness's intent in providing false or inaccurate testimony is "not relevant to [a] false-testimony due-process error analysis"). Thus, a witness's "testimony need not be perjured in the penal-code sense for it to be false in the due-process sense"; instead, the key question is whether when "considered in its entirety, the witness's testimony left the jury with a false or misleading impression." *Ex Parte Reed*, 670 S.W.3d 689, 767 (Tex. Crim. App. 2023), cert. denied sub nom. *Reed v. Tex.*, 144 S. Ct. 2716 (2024).

Appellant contends Kimberly's testimony that Carolina attempted to have the charges against her boyfriend dismissed can be considered false under this standard, as it created a "false

---

[13] Section 37.02 of the Texas Penal Code provides that a person commits the offense of perjury "if, with intent to deceive and with knowledge of the statement's meaning: (1) he makes a false statement under oath or swears to the truth of a false statement previously made and the statement is required or authorized by law to be made under oath . . . [.]" Tex. Pen. Code Ann. § 37.02(a)(1).

impression that Carolina takes the side of abusers and that she failed her daughter." According to Appellant, "the State used this narrative throughout trial, and in its closing argument as well," thereby making Kimberly's testimony material to the State's case and raising a reasonable likelihood that her testimony affected the jury's verdict.

We will assume for purposes of our analysis that Kimberly's testimony can be considered "false" or misleading for due process purposes, in that it created a false impression of how Carolina responded when she learned that her boyfriend had abused Kimberly. However, there are several factors that lead us to conclude Kimberly's testimony on this issue was not "material" to Appellant's case such that it was reasonably likely to have affected the jury's verdict. First, the jury was aware before its deliberations that there was a conflict between Kimberly's testimony (that she believed Carolina tried to sweep her boyfriend's abuse "under the rug") and the testimony of both Carolina and Yvonne (that they believed Carolina took all necessary steps to ensure law enforcement and the courts took care of the matter). When a jury convicts a defendant despite being aware of inconsistencies in the testimony—meaning that one witness is not being truthful—that witness's allegedly false testimony is not considered material. *See Ex Parte De La Cruz*, 466 S.W.3d 855, 871 (Tex. Crim. App. 2015) (where defendant claimed a witness provided false testimony regarding the location of a shooting, the testimony was not material where the jury was aware of the inconsistencies in witness testimony regarding the location, yet nevertheless chose to convict the defendant).

In addition, contrary to Appellant's argument, the State did not focus on Kimberly's testimony on this issue during its closing arguments. Instead, the State focused on Carolina's testimony that an "agency" or "agent" informed her that Kimberly had not been raped, and she did

not know what else to do to help Kimberly at the time. Rather than accusing Carolina of failing Kimberly when the abuse came to light, the State argued the "system failed" Kimberly and "more should have been done for her." In turn, the State used the system's failure to explain why Kimberly found it important for N.G. to tell her what happened and argued that Kimberly pressed N.G. to make her outcry as she was not "about to let her daughter go through that" and wanted to make sure that Kimberly could "find a way forward" and receive the therapy she needed.[14]

Finally, although Kimberly was undoubtedly an important witness, the State did not rely solely on her testimony to establish Appellant's guilt. To the contrary, N.G. expressly testified at trial that Appellant had sexually assaulted her. Several other witnesses—including two law enforcement officers and a SANE nurse—testified that N.G. provided consistent statements describing the abuse, all of whom found her outcry credible. Accordingly, based on the record as a whole, we conclude Appellant did not establish that Kimberly's "false" testimony was material to the jury's verdict, such that his due process rights were violated by its admission. *See Ex Parte Weinstein*, 421 S.W.3d at 668 (finding witness's false testimony was not material to the defendant's case such that his due process rights were violated where the testimony was not necessary to establish his guilt and where there was ample evidence from other sources of his guilt).

Appellant's Issue Two is overruled.

---

[14] Moreover, as explained above, it was defense counsel that focused on Kimberly's testimony in her closing arguments by contending that Kimberly pressured N.G. into fabricating her claim of abuse because she was still angry about her mother's alleged failure to protect her after Carolina learned her boyfriend had abused her.

## V.  DENIAL OF THE MOTION FOR NEW TRIAL AND FAILURE TO HOLD A HEARING

In Issues Three and Four, which we consider together, Appellant contends the trial court erred in denying his motion for new trial, as Article 40.001 of the Texas Code of Criminal Procedure required the trial court to grant his motion based on his discovery that Kimberly had provided false testimony at trial. In the alternative, Appellant contends the trial court erred at least in failing to hold a hearing on his motion. We disagree with both arguments.

### A.  Standard of review

An appellate court reviews a trial court's denial of a motion for new trial for an abuse of discretion, "reversing only if no reasonable view of the record could support the trial court's ruling." *Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020) (quoting *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017)). We do not substitute our own judgment for that of the trial court; we must uphold the trial court's ruling "if it is within the zone of reasonable disagreement." *Id.*; *see also Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006) (recognizing that an appellate court's role is to "decide whether the trial court's decision was arbitrary or unreasonable").

We similarly review a trial court's decision to deny an evidentiary hearing on a motion for new trial for an abuse of discretion. *See Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003) (en banc) (citing *Martinez v. State*, 74 S.W.3d 19, 22 (Tex. Crim. App. 2002)). "The purposes of a new trial hearing are (1) to determine whether the case should be retried or (2) to complete the record for presenting issues on appeal." *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). There is no "absolute right" to a hearing on a motion for new trial, but a trial court abuses its discretion by failing to hold a hearing "if the motion and accompanying affidavits (1) raise

16

matters which are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief." *Id.* Nevertheless, a trial court may rule on a motion for new trial based solely on sworn pleadings and affidavits, and that "live testimony is not required." *Holden*, 201 S.W.3d at 763.

## B. Applicable law

Article 40.001 of the Texas Code of Criminal Procedure provides that "[a] new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." Tex. Code Crim. Pro. Ann. art. 40.001. The Court of Criminal Appeals adopted the following four-part test in determining whether a new trial is required under Article 40.001: "(1) the newly discovered evidence was unknown or unavailable to the movant at the time of his trial; (2) the movant's failure to discover or obtain the evidence was not due to a lack of diligence; (3) the new evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result on another trial." *Keeter v. State*, 74 S.W.3d 31, 36–37 (Tex. Crim. App. 2002); *see also State v. Arizmendi*, 519 S.W.3d 143, 149 (Tex. Crim. App. 2017) (recognizing same).

## C. Analysis

Appellant contends he was entitled to a new trial pursuant to Article 40.001 based on his discovery after trial that Kimberly had provided false testimony, which was "material" to the State's case, on the issue of whether Carolina sought to have the charges against her boyfriend dismissed. Appellant, however, provides no analysis of the four factors for granting a new trial, and we therefore find that he has not adequately briefed this issue. Tex. R. App. P. 38.1(i) (indicating that an appellant's brief "must contain a clear and concise argument for the contentions

17

made, with appropriate citations to authorities and to the record"); *see also Blanco v. State*, No. 08-15-00082-CR, 2017 WL 604050, at \*7 (Tex. App.—El Paso Feb. 15, 2017, no pet.) (not designated for publication) (where appellant failed to adequately brief an issue as required by the Rules of Appellate Procedure, the court would not make his arguments for him) (citing *Wyatt v. State*, 23 S.W.3d 18, 23 n.5 (Tex. Crim. App. 2000) (where appellant alleged that he was not properly magistrated but made no legal argument to support his allegation, court would "not make appellant's arguments for him and [held] the allegation to be inadequately briefed")).

Appellant, however, argues he is entitled to a new trial independent of the statute, relying on our sister court's opinion in *Yates v. State*, 171 S.W.3d 215, 221 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd), which held that "[g]enerally, if a witness has testified to material, inculpatory facts against a defendant and, after the verdict but before a motion for new trial has been ruled upon, the witness makes an affidavit that he testified falsely, a new trial should be granted." *Yates*, 171 S.W. 3d at 221 (citing *Williams v. State*, 15 S.W.2d 449, 451 (Tex. Crim. App. 1964)). In *Yates*, the defendant who was accused of drowning her children pled not guilty by reason of insanity, arguing she suffered from such severe postpartum depression that she did not know "right from wrong" at the time. *Yates*, 171 S.W. 3d at 219–22. Five mental health experts testified at trial in her favor, but one expert testified that he believed the defendant knew right from wrong, basing his opinion in part on his belief that the defendant's actions had been motivated by an episode of "Law and Order" (on which he had worked as a consultant) that depicted a case in which a mother suffering from postpartum depression had been found not guilty by reason of insanity in the drowning deaths of her children. *Id*. at 219, 222.

After the jury rejected the defendant's insanity defense and found her guilty of murder, defense counsel learned there was no such "Law and Order" episode and sought a new trial on the basis of the expert's false testimony. *Id.* at 221–22. The court of appeals held that the trial court erred in denying the motion, concluding the expert's testimony was "critical to establish the State's case," as he was the only mental health expert who testified that the defendant knew right from wrong, and therefore there was a reasonable likelihood that the expert's testimony affected the jury's verdict. *Id*. at 222.

Appellant argues we should follow *Yates* and hold that the trial court in his case erred in denying his motion for new trial based on his discovery that Kimberly provided false testimony. As explained above, however, we have already concluded that Kimberly's allegedly false testimony was not critical to establish the State's case. Unlike the situation in *Yates* in which the only witness to testify in the State's favor testified falsely, the State in Appellant's case presented the testimony of several other witnesses, including N.G. herself, to support a finding of Appellant's guilt. Accordingly, the trial court could have reasonably concluded that even if Kimberly's testimony was false, it was not material to the State's case and therefore did not warrant a new trial.

For similar reasons, we conclude the trial court could have reasonably found that there was no basis for holding a hearing on Appellant's motion for new trial. Although Appellant contends a hearing was necessary because his motion raised "issues" that were not determinable from the record, he has not explained what those issues were or why he believes live testimony was required to resolve any of the issues raised in his motion. Nor do we believe live testimony was required to do so. As explained above, the key question in resolving Appellant's motion was not whether

19

Kimberly provided false testimony but whether her allegedly false testimony was material to the State's case. And we are able to resolve that question in the State's favor based the trial record and the evidence Appellant submitted in support of his motion without the need for a record of live testimony.

Accordingly, we conclude the trial court did not abuse its discretion in failing to hold a hearing on Appellant's motion for new trial and did not err in refusing to grant the motion.

Appellant's Issues Three and Four are overruled.

## VI.  CONCLUSION

The trial court's judgment is affirmed.

LISA J. SOTO, Justice

September 27, 2024

Before Alley, C.J., Palafox, and Soto, JJ.

(Do Not Publish)

20